Next case for argument is 24-1407, Game Plan v. Uninterrupted. We're ready whenever you are, Mr. Jones. May I please the Court? Good morning. I am Ryan Jones, Counsel for Game Plan, Incorporated, along with Ms. Luis Mastriani, as of Counsel. Today we ask for the December 14, 2023, final decision by the Trademark Trial and Appeals Board to be reversed. In consideration of all facts, omissions, and procedural steps on the record during the opposition action below, the Board erred by favoring UNIP's untimely assignment under Chapter 37 of the Code of Federal Regulations, subsection 2.133a, claiming priority from an assignment that violated 15. So there's a lot of new—we don't get that many trademark cases, and there's a lot of terms and a lot of arguments made here that I've rarely seen, and that goes to this gross assignment thing and to this anti-trafficking thing. If we conclude that it was a legitimate assignment which included goodwill and it happened whatever date it happened, do you just lose? Is that the issue that's really the gravamen of what your complaint is? It's priority, yes. So priority matters here, and we believe that the rule 2.133a is preclusive to the untimely transfer, and that stops it. It cannot be. Why wasn't the 2019 transfer valid? Say that one more time, sorry. The 2019 transfer, why wasn't it valid? When you look to 2.133a, it reads— You're going to have to speak up a little bit. Okay, it reads, an application such as uninterrupted six intent to use applications, they're subject to an opposition. That opposition started on November 28, 2018, about two months prior to the acquisition that they made in 2019. The start of that action closes the universe. It gives all the parties notice of this is what is before the board. It closes the record. Going and trying to assume prior rights from another third party is like trying to rewrite history. Counsel, do you agree that the plain language of the assignment itself indicates the transfer of goodwill here? So what they did to acquire the rights, meaning what you and I— Listen to my question. Just answer it first, and then you can go back into your skill. Do you agree that the plain language of the assignment itself indicates a transfer of goodwill, looking at the actual language of the assignment? We have called it into question based on evidence in the record. However, just the plain language, the assignment, we would say that— We would turn to the law, but we don't say that the actual goodwill, based on that agreement between the parties, we don't call that into question. Well, in terms of—if I'm looking at the web page, is appendix page 263 the right page? Do you have access to the appendix? I do, but not at the table, you know. Well, if you've got it somewhere, grab it from the bench or wherever. I think that would be helpful for our discussion. Okay. Do you have a copy of it? Do you have a copy of it? I have a copy of it. Oh, okay. Yes. Excuse me. Page 263, Your Honor. Appendix page 263 was the one that I was asking. So thank you for passing that through as well.  I appreciate that. So tell me if I'm looking at the correct information here, but what I was looking at was on appendix page 263, where it talks about purchased IP assets and specifically says that together with the goodwill of the business. And I was interpreting that, at least, as showing that the plain language of the agreement itself indicates a transfer of goodwill. Is this the right place for me to be examining? We think no. Oh, well, where do you think I should be looking instead? Is there a different page you want to point me to? Well, as far as the goodwill, we turn to certain case law that says just because. Wait, I want to look at the actual agreements themselves. I understand that you also want to argue some case law, but can I look at the actual, if there's something that you think is more applicable than appendix page 263 for the actual language of the assignment, can you tell me what page that is in the record? Your Honor, I believe that this language of the assignment is the only language, the plain language speaks to the intent of the parties, yes. Okay, so you agree that what's on 263 records the language of the assignment? Yes. Okay, thank you. Did Game Plan also admit that the mark that UNIP acquired from MTAA has priority over Game Plan's mark? I don't believe we admitted that. We believe that that mark in Class 35 was filed before Game Plan's mark, which was filed in 2016. Game Plan's mark filed in 2016 was granted by the United States Patent and Trademark Office, the Trademark Office, allowing it to be federally registered and gaining protection to sell its T-shirts for the benefit of the non-profit. I want to follow up on this because I read the record, and I thought I read in the briefing, that there was a complaint paragraph, paragraph 6 on JA 97, that was asking about priority, and then there was, I believe in the answer, an admission on page JA 108, paragraph 6 that said admit it. Do you disagree that that is the correct state of the record? I do. Okay, why do you disagree? No, I agree that that's what the record says. Okay, thank you. So is the issue about intent to use, which seems to be a legal question about the anti-trafficking stuff, the counterclaim here is not an intent to use. So that's why, I mean, you're resting on this filing of an intent to use application, but that's not what the counterclaim is based on. The counterclaim is based on the purchase of this earlier trademark, right? Yes. So where's the problem under the anti-trafficking statute? That's what we're talking about. So we believe that that purchase is void, based on the plain language of 15 U.S.C. 1060A. It reads that a registered mark or mark for which an application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use and symbolized by the mark. Notwithstanding the preceding sentence, no application, UNIP's application, to register a mark under Section 1051B, that's their intent to use application, of this title shall be assignable prior to the filing of an amendment under Section 151C of this title to bring the application into conformity with Subsection 1051A. So what they told the world when they filed their six applications is that, we haven't used these marks yet. We plan to, and the rules of the trademark- Yeah, but there was an intervening event, which was the assignment. And that assignment occurred after the opposition, and we believe because the opposition triggers a close of the universe, UNIP cannot create a workaround and go find another mark to try to gain priority to game plan. It did not have priority to game plan. That assignment is void and should be used, and using Section 2.133A. And the statutory provision you're pointing to is, is that- Chapter 37 of the Code of Federal Regulations, Subsection 2.133A. It states an application such as UNIP's intent to use application, which are subject to an opposition, may not be amended in substance. And we believe that the purchase made on February 22nd, 2019, was such an amendment. So you're viewing the assignment itself as being an amendment within the context of 37 CFR 2.133? Yes, Your Honor. And what if we disagree with you if the assignment itself is an amendment within that CFR provision? If we disagree, do you agree that you lose the case? No. Okay, so why do you say you don't lose the case? Because in reading through 15 U.S.C. 1060A.1, you get to the third sentence, which requires that these intent to use applications must be amended. And 1051C, 15 U.S.C. 1051C reads, Amendment of an application under Subsection B to conform the requirements of Subsection A at any time during examination of an application filed under Subsection B. An applicant who has made use of the mark in commerce, and UNIP now says it alleges it has used the mark by assignment for Ms. Alex, may claim benefits of such purposes of this chapter by amending his or her application to bring it into conformity with the requirements of Subsection A. So is there something in 15 U.S.C. Section 1051 that you're saying requires amendment? I'm trying to follow the argument you're making right now. Yes, so when people file for their trademarks, they're filing under two different concepts. One is that they're already using the mark, and they want the protection from the trademark office. Or two, which is what UNIP did, they're saying, we're going to use this mark. And when we do use this mark, we want the protection dating back to the day of filing our application. But we'll start the application process, and then we'll go back once we start putting the product into the stream of commerce and amend. So what about the third party that used the mark even before, and that's the party that they purchased the mark from? Are you saying that is irrelevant, the use before by the third party? It happened. Their use, that prior person's mark was used. However, UNIP cannot access that use and say that they've used it as she used it based on the language because they would need to tell the Patent and Trademark Office, by amending their application, we're using it. Because they had filed an intent to use that would preclude them from getting a common law assignment? Yes. And that's, OK. Well, you're into your rebuttal. Why don't we hear from the other side? OK. And we'll keep doing rebuttal time. All right, thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Howard Shire. I'm a firm of Trapp and Pepper Locke. This is a straightforward, not difficult case at all to decide in terms of- Can you get the discussion we've been having for the last five minutes? Yes. So why don't you give us your input? Sure. Sure. It's clear that for purposes of our counterclaim, this party has been elected to confusion. The undisputed facts lead to the conclusion that there was a valid assignment. It's really the only issue on this appeal. The other side does not dispute that the mark was used- Well, yeah, but they're raising issues that deal with what you're permitted to do under the statute. The statute does not, in no way, prohibits assignment of a common law mark. What Mr. Jones is talking about is a situation where a mark, an intent to use application, is assigned before there's a statement of use filed. That's what is prohibited, but that's not our situation at all. Nothing in the statute or the CFR that he cites prohibits assignment of a common law trademark from somebody else. There was no amendment- Even after an intent to use application. Has been filed, yes. Nothing prohibits an assignment of prior common law rights to an intent to use applicant. We never amended any of our applications. In fact, the assignment issue, which is the common law rights for T-shirts, that certainly wouldn't apply to all six of the applications, since some of them have nothing to do with T-shirts. But the black-letter law is that an assignment of a trademark enables the assignee to stand on the shoes of its assinore, provided that both the assinore and assignee use the same trademark, more than an athlete, and they use it for the same product, which in this case is T-shirts. They both use the same marks for the same products. In the statute, does it limit the assignment of common law rights? No. No. In no way. The other side has cited no case which prohibits assignment of common law rights to an ITU applicant. We never amended any of our applications. That's undisputed. The opposing counsel appears to be arguing that the assignment was effectively should be treated as an amendment. What's your response to that? It's not an amendment. We never amended the applications. That's undisputed if you look at the file histories. You're allowed, for example, when you file an intent-to-use application, when you get around to filing your statement of use, nothing prohibits you from asserting a date of first use prior to the date you filed your intent-to-use application. An assignment is valid, as I said, as long as the assinore and assignee were using the same trademark for the same goods. And that's exactly what happened here. When I was having the conversation with opposing counsel, was JA-263 the appropriate page to look at for the assignment language? That is the appropriate page. It explicitly covers common law marks, as well as a registration that's probably not relevant to this particular case at the moment. I'm sorry. I just want to make sure I understand what everybody is saying here, which is that his view is under the statutory or regulatory provisions he cited that because they did this intent-to-use application, you were foreclosed from doing the assignment and then coming in and trying to upend stuff by the assignment. I'm sorry, go ahead. Is that how you understand his argument? That's how I understand his argument, but it's not. Okay, and then your answer is? That's not, nowhere in the statute do you find that. Assignments are commonly made of trademarks, and the assignments are perfectly valid. You know, assuming the assignee uses the same mark for the same goods as the assignor, and then the assignee is entitled to stand on the shoes of the assignor. But, you know, that's what happened in the dial mattress case and in the money store case that we have cited. Is an assignment effective if there's been no prior use of the trademark that's been assigned? If there's been no prior use, it's not a valid assignment. There's no goodwill, then, associated. You have to always assign the goodwill. I thought that would be a demonstration of goodwill. Is there any evidence of a record of a goodwill here? Oh, sure. Yes, there's abundant evidence of uses of the mark by Deandra Alex from at least 2013 to 2018 for T-shirts, at least, and other products. And that's what the goodwill is. Goodwill is generated by consumers, you know, seeing the trademark having been in use, and the goodwill was assigned. So the closing counsel was making an argument, at least as I understand it, that the assignment was an intervening event that prevented you all from relying on that goodwill that occurred previously by the third party. What's your response to that? Once again, nothing in the statute prevents an applicant, an intent to use applicant, from acquiring prior rights. It's just not there. What he is talking about is an intent to use applicant. I think he's confused about it. An intent to use applicant cannot assign its application before filing a statement of use. But that doesn't apply to Deandra Alex's common law mark. She was not based on her application. Is that what these provisions he's citing are intending to? Yes, it all concerns intent to use applications. And the fact of the matter is that if you want to assign an intent to use application, it's very difficult to do that if there's been no statement of use. Follow the trademark, all of us. And the cases he cites are exactly those kinds of cases, which are classic invalid assignments of intent to use application. But here, R. Asanoor had no intent to use application, just had regular common law rights, which she was free to assign, which she did assign here. Remember, it's only the assignment's valid if the mark is used by both parties, the Asanoor and Assanee, for the same mark for the same goods. And that's exactly what happened here. The other side has not disputed that Deandra Alex used her mark from at least 2013 to 2018 in connection with at least T-shirts and wristbands, which makes the assignment valid when entitled to step into the shoes of Ms. Alex, including her first use dating back to at least 2013 for T-shirts. So once again, the only defense he has is that the assignment is somehow invalid, and there's no ground for asserting that. In the first place, as Judge Cunningham pointed out in her questioning, it's undisputed that a game plan admitted that my client has priority. That's on the appendix, page 97, when we've made that allegation in paragraph 6 of our counterclaim. And a game plan's answer admitted this on appendix page 108. The other side has never attempted to amend this answer. We made this argument in our appellate brief, and in their reply brief, the other side ignored it. So I'm at my position that they effectively have conceded this validity of our argument on the priority based on the plea and their answer. The assignment does not constitute any sort of amendment of our applications. We've never filed any amendment with the Patent and Trademark Office. The applications are still sitting there pending the outcome of this case. So we've never amended or tried to amend any of the applications. And he cites no case for the proposition, he's asserting, that an assignment of common law rights constitutes an amendment of a pending ITU application. There are formal ways of amending an ITU application, and my client's filed none of them. So there's clearly been no amendment. He also argued in his brief there's been abandonment of our client's trademark. But that's just not true. There's two tests, two part tests for abandonment. One that has to be non-use for a period of time, and secondly has to be intent not to resume use of the mark. Neither one of these is satisfied here. It's undisputed that Ms. Adams used her mark up through 2018, February 2019. The mark was assigned to her, to my client. So there's no period of non-use. There was no intent not to resume use. Indeed, she protested to Mr. Sam Sese, the principal of Game Plan, about his proposed use of his trademark. But he used it nonetheless. Now, there's also an argument my adversary makes about taking judicial notice. He wants this court to take judicial notice of the entire record down below in the TTAB, but he cites no authority for such a broad use of judicial notice. And speaking of that, the issue about not allowing him to use information in the record because he was given an opportunity to supplement the record and he didn't, is that what went down? I wouldn't say supplement the record, Your Honor. I would say he never put in any evidence during his specified testimony period, and he was warned in advance even by the TTAB. Would that have made any difference? I mean, I'm not quite— Well, he could have put in—I don't know what evidence he would have put in, but it could make a difference. Right now, there's no evidence in the record concerning Game Plan except for their federal registration. So what evidence would have been useful to his arguments here? I don't know. A use before? Yeah. He alleges common law use, for example. There's no evidence of any common law use by his client. I don't know what use he would have put in. I mean, I don't advise his client, obviously. I don't know what evidence he could have or would have put in, but the fact of the matter is that he put in none. And by doing so, he's asking this—by his request for judicial notice, it's unprecedented. We're aware of no case, and Game Plan decided no case, in which this Court took judicial notice of an entire record down below when Game Plan had a full and fair opportunity to put in its evidence before the TTAB, and they were even warned by the TTAB at page 367 of the appendix that, hey, if you don't put it in, you're not going to be able to put in any evidence. You've got to put it in the timeline, in the relevant time period. And if this Court were to allow Game Plan to now take judicial notice of the entire record below, including whatever pretrial motions were filed, it would upend—it would effectively vitiate the careful and longstanding procedures the TTAB has for taking testimony. As you're probably aware, the TTAB has various testimony periods for both sides, and in effect, you would be saying that, hey, it's okay, you don't have to abide by the TTAB's rules. We'll take judicial notice of an appeal of anything that you didn't put in, and which is just—upend proceedings terribly before the TTAB, and in effect vitiate their rules on the taking of testimony, and could apply to other administrative bodies such as the PTAB, for example. So it would be—I think it would be a terrible thing if you were to take judicial notice of the entire record below, notwithstanding Game Plan's failure to provide any testimony, even especially because they were warned by the TTAB, that might happen. They also attack another ground that they assert for supposedly invalidating the assignment is our client's motive for acquiring the mark. But that doesn't matter. Under the dollar mattress and the money store case we've cited, it's perfectly acceptable for a party to acquire prior trademark rights so they can establish their business and they can overcome a claim of infringement. So it doesn't matter what our motive might have been, and there's no evidence, by the way, in the record of what our motive was. It was a valid assignment, given our subsequent use of this, of the mark, for the same goods as Ms. Alex used it. He also makes—the other side also makes the argument that this is how this is an assignment in gross. As was pointed out during his argument, the assignment at issue here specifically recites a transfer of goodwill, which is how goodwill is frequently transferred in a trademark deal. All he does is he cites inapposite cases, as I said, involving an assignment of an ITU application before a statement of use is filed with the PTO. That is clearly an assignment in gross and is invalid. So given all these facts and the legal standard, it's perfectly appropriate for my client to tack on to the prior use of More Than Athlete for T-shirts, going back to Ms. Alex's first use in 2013. That's all you need. As I said, the same mark, the same goods. That compels a valid assignment. Not only that, but here my client went ahead at the time of the February 2019 assignment. We hired Deandra Alex, the predecessor in interest, as a consultant, specifically to help uninterrupted with the More Than Athlete business. So there's clearly a continuity in the goodwill from the assignment and the retention of Ms. Alex. Both parties used the same mark, not just for the same good, but basically for the same purposes, the idea that athletes have a story to tell beyond whatever they accomplish on the playing field or in the arena. That's how we've used it. That's how Ms. Alex used it. And it's a perfectly congruent succession of use, and in accord with the black-letter trademark principles regarding assignment of a trademark. This is not a unique situation. It happens frequently. Thank you. Okay. Thank you, Your Honor.  Your Honor, you heard about common law rights. Common law rights were addressed in the board's decision saying that because of what we raised under 2.133A and 1060, then that federal mark they ignore and say, well, let's just talk about the common law rights that were transferred. But those common law rights effectively create the amendment in substance under 2.133A. But why isn't the assignment? I don't think it's an amendment. It's a separate and used in the counterclaim. They didn't purport to amend the intent-to-use application with the assignment. So that's why I'm not appreciating why that comes under the statutory provisions you've told us about. The opposition started on November 28, 2018. All of the facts preceding that are what the court should be looking to. That's what the closed universe is. When they then filed an answer in counterclaim, that puts us at the position of being not only the plaintiff, but the defendant, and the universe closes. And they've told us now, oh, we've acquired rights in February, two months after the commencement of the action. The board then cites two in quotes that they believe that UNIP was in conversation with Deandra Alex, and that conversation created some sort of intent that they were going to buy it. Therefore, timing of the transfer is of no moment. But we disagree. 2.133a addresses it. Now, there's been reference to the dial-a-mattress case, and the dial-a-mattress case, that's in federal court, in federal litigation. And they argue that when dial-a-mattress bought an assignment or created an assignment before the board and the patent office granted it, that was somehow a timely issue. But here, our facts are procedurally discernible and factually discernible from the dial-a-mattress case. We're before the board, asking the board to make a decision on their applications. We're saying their applications should be denied because they weren't using the mark in commerce. They had not been. It was impossible for them to be using the mark prior to game plan. Game plan advertised their product, sold T-shirts from 2016 to 2018 and beyond. UNIP comes in after the fact and says, we purchased another company. Therefore, we can stand in their shoes. Our issue is what the board decided and that we have priority to UNIP. And it did. And they seek to rewrite history and jump in a time machine with the assignment. We have priority. Their change is essentially an amendment which does trigger Chapter 37. And even if it doesn't trigger Chapter 37, 2.133a, it triggers 1060, the anti-trafficking rule. It says you can't traffic a mark. You can't say to us, the Patent and Trademark Office, we're using a mark and we're going to go and buy another mark in order to gain power and priority so we can defeat game plan. It's almost as if these rules were put in place to stop the very thing that they did. Okay. Time's up. Thank you very much. The case is submitted.